UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI KOURANI<br><br>          Plaintiff,<br><br>   v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, et al.<br><br>          Defendants. | Civil Action No. 22-0195 (CJN) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND BIFURCATE**

The Central Intelligence Agency ("CIA"), the Federal Bureau of Investigation ("FBI"), and Executive Office for United States Attorneys ("EOUSA") (collectively "Defendants"), by and through undersigned counsel, respectfully move to dismiss and for the Court to bifurcate the proceedings in this matter by allowing the FBI and EOUSA to conduct a categorical review of records responsive to the Freedom of Information Act ("FOIA") requests submitted by Plaintiff Ali Kourani, to assert FOIA Exemption 7(A), 5 U.S.C. § 522(b)(7)(A), as a basis for withholding all non-public responsive information, while preserving their right to assert all other applicable exemptions at a later date.

**INTRODUCTION**

Plaintiff has been convicted, sentenced, and is currently collaterally attacking his prosecution in the Second Circuit. He commenced this FOIA action, seeking records pertaining to himself. Because he never submitted a proper request to the CIA, it should be dismissed from this action. In addition, FBI and EOUSA have located responsive investigative files through their searches, and anticipate withholding all non-public records pursuant to Exemption 7(A), which

authorizes the withholding of "records or information compiled for law enforcement purposes," provided that their disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). This bifurcation request would allow the FBI and EOUSA to process, release, and defend Exemption 7(A) claims on a more expedited and less cumbersome basis than if they had to process, release, and brief all the other underlying exemptions. Generally, if the Court were to bifurcate this action, the agencies would be able to process responsive records on a categorical document-by-document basis versus the more cumbersome page-by-page basis that the agencies would be required to undertake if the Court were to deny this motion. For example, it would take the FBI twenty-eight months to complete Exemption 7(A) only process and fifty-four months to process all underlying exemptions. There are significant and time-consuming processing differences under both regimes. The agencies have presented sufficient justification for the Court to exercise its discretion to grant this motion under this Circuit's law.

## BACKGROUND

Plaintiff commenced this FOIA action, seeking records about himself and his prosecution in *United States v. Kourani*, Crim. No. 17-0417 (S.D.N.Y.). *See* ECF No. 1; *United States v. Kourani*, 6 F.4th 345 (2d Cir. 2021) (affirming Plaintiff's conviction for providing material support to a terrorist organization). Currently, Plaintiff is appealing to the Second Circuit, the Southern District of New York's denial of his motion pursuant to 28 U.S.C. § 2255. *See Kourani v. United States*, No. 23-6982 (2d Cir. entered Sept. 19, 2023), Order ("grant[ing] Appellant['s] extension to file motion for certificate of appealability by October 19, 2023); *see also* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/21a346.html    (visited Nov. 1, 2023).[1]

---

[1]    Plaintiff is subject to a protective order which authorizes him only supervised access to discovery. Plaintiff appealed that order, and the government demonstrated that the Plaintiff's

Although Plaintiff alleges that he submitted a request to the CIA for "[a]ll records in [its] possession containing [his] name," it appears that he sent it to the CIA's FOIA Coordinator at 935 Pennsylvania Avenue, NW, Washington, DC 20535.  *See* Exhibit A, Declaration of Mary C. Williams at 2-3 ¶ 5 ("Williams Decl."); *see also* ECF No. 1 at 2-3, ¶ 7.  The CIA is not located at that address and it does not have a FOIA request from Plaintiff.  *Id*. at 3, ¶ 6.  To date, "the CIA still has not received a properly submitted FOIA request from the Plaintiff.  *Id*.  ¶ 7.  "To confirm the absence of a request, CIA personnel have searched a case management system on five different occasions[,]" using both Plaintiff's first and last name on one hand and last name alone on the other.  *Id*.  Because it did not receive a proper request from the Plaintiff, it was not able or required to take any further action.  *Id*. at 3-4, ¶ 9.

Plaintiff also requested his investigative and prosecution files from both the FBI and EOUSA.  *See* Ex. B, Declaration of Michael G. Seidel at 3 ¶ 5 ("Seidel Decl."); *see also* Ex. C, Declaration of Nicole Moore at 3 ¶ 6 ("Moore Decl.") ("A copy of all grand jury transcripts, maintained in any system of records maintained by the US Attorney's Office for the Southern District Of New York, pertaining to my federal criminal case, *USA v. Ali Kourani*, Case # l:17-CR-00417-AKH (S.D. New York)").  Both FBI and EOUSA are seeking bifurcation relief from the Court to allow them to process any responsive records in a shorter timeframe on a document-

---

unsupervised access to discovery "would endanger law enforcement sources and witnesses, and could potentially reveal law enforcement methods and techniques to Hizballah."  Ex. D.   In its order upholding the motion, the court found allowing Plaintiff access to discovery documents would "compromise[] national security investigations if disclosed to Hizballah because many of those materials reveal details of the FBI's investigation that were not described at trial; describe law enforcement counterterrorism strategies; and contain identifying information for counter-terrorism agents who did not testify at trial."  Ex. E.  In this litigation, Plaintiff seeks documents barred from him via discovery in the underlying criminal case.

by-document basis under FOIA Exemption 7(A) as opposed to the longer process of identifying and defending each underlying exemption.  *See generally* Seidel Decl.; Moore Decl.

The FBI and EOUSA records that Plaintiff seeks are protected from disclosure under Exemption 7(A) because the records pertain to ongoing investigations of third parties as well as his collateral attack to his conviction and sentence.  *See* Seidel Decl. at 3, ¶ 6 (The "information gathered as a result of the FBI's investigation of Kourani is relevant to other ongoing investigations on third party co-conspirators.  These investigations have not been made public, therefore those targets are not aware [and] the release of these records could reasonably be expected to interfere with Plaintiff's criminal proceedings."); *see also* Moore Decl. at 5, ¶ 9 ("[T]he materials contained in the District's files would reasonably be expected to interfere with Plaintiff's ongoing criminal proceedings.").  Thus, both the FBI and EOUSA have categorically denied Plaintiff's FOIA request pursuant to FOIA Exemption 7(A).  *See* Seidel Decl. at 4, ¶ 8; *see also* Moore Decl. at 5, ¶ 12.

Although the FBI can conduct a categorical instead of a record-by-record review, showing that information is exempt from disclosure under Exemption 7(A), it "must divide information it seeks to withhold into 'categories . . . [that are] sufficiently distinct to allow a court to grasp how each . . . category of documents, if disclosed, would interfere with'" enforcement proceedings. *Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 940 (D.C. Cir. 2003) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986)) (other citation omitted).  An Exemption 7(A) bifurcated approach allows the agencies to identify the type of document (e.g., e-mail, electronic communication, interview, investigative report, etc.), group the documents into functional categories (i.e., administrative, evidentiary/ investigative, or public source/non-investigative harm materials), and analyze each record to determine if its release would

interfere with ongoing law enforcement proceedings.  *See* Seidel Decl. at 5-6, ¶ 12; Moore Decl. at 4, ¶ 14.  If the Court were to permit a bifurcated approach, the FBI anticipates that a categorical review, to include identifying documents for withholding under Exemption 7(A) as well as processing and releasing any segregable material, would take twenty-eight months to complete because of the number of records at issues and the complexity of its review.  *See* Seidel Decl. at 6, ¶¶ 14-20 (compare the fifty-four months it would take the FBI to review and process for the underlying exemptions under a non-bifurcated approach); *see also* Moore Decl. at 7-8, ¶¶ 14-20 (compare twelve months for processing under a bifurcated approach versus approximately forty months for review of the underlying exemptions plus preparation of a declaration for dispositive briefing).

One of the main drivers of the difference in processing times is that, for an Exemption 7(A) review, a "categorical document-by-document review" is all that is required versus "a much lengthier review to identify additional, underlying exemptions for assertion despite the blanket coverage of Exemption 7(A)."  Seidel Decl. at 6, ¶ 13.  In addition to the document-by-document versus page-by-page differences, in the non-7(A) processing, the FBI must still conduct "further research and extensive legal analysis.  For example, when a document indicates that information within was provided by a confidential source, the analyst must then research the source to determine if they were granted an express assurance of confidentiality or if the FBI can protect the sources' information pursuant to Exemption 7(D) based on a presumption of confidentiality (implied confidentiality)."  Seidel Decl. at 8, ¶ 16.  "Such research can be rather time consuming and has little to no bearing on the fact that the FBI will continue to withhold the entire record pursuant to Exemption 7(A); essentially, the same amount of effort is required, while neither

positively nor negatively affecting the actual release of the information while Exemption 7(A) remains intact." *Id*.

Moreover, to process non-7(A) exemptions, the FBI is required "to conduct a classification review, which is necessary in order to assert" Exemption 1 and which is carried out by "[o]nly a small portion of [FBI FOIA] analysts [who] are qualified to conduct classification reviews relative to those applying FOIA exemptions." *Id*. ¶ 17.   On top of that, the FBI is also required to confer and consult with other agencies that either originated or have equities in the records.  *See id*. ¶ 18.  In the midst of these tasks, the FBI is experiencing record numbers of FOIA requests and FOIA litigation, including the most complex types.  *See id*. at 4-5, ¶¶ 9-10 ("[I]n FY 2022, [FBI] received its highest number of requests for records—43,363 [FOIA and Privacy Act] requests, which represents a 58% increase in requests from FY 2017 (27,535 FOIPA requests)" and almost a 100% increase in litigation up to 2023).

## STANDARD OF REVIEW

## I.   <u>Motion to Dismiss for Failure to State a Claim</u>

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim need not be more likely to succeed than to fail but must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Elec. Privacy Info. Ctr. v. IRS*, 261 F. Supp. 3d 1, 5 (D.D.C. 2018) (citing *Sparrow v. United Air Lines, Inc*. 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  When ruling on a 12(b)(6) motion, a court may consider the complaint along with "any documents

either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch*., 117 F.3d 621, 624, (D.C. Cir. 1997).

**II.**   **Motion to Bifurcate**

As a general rule, the Government must assert all exemptions at the same time, in the original district court proceedings. *See Maydak v. Dep't of Just.*, 218 F.3d 760, 764-65 (D.C. Cir. 2000) (citing *Wash. Post Co. v. Dep't of Health & Hum. Servs*., 795 F.2d 205, 208 (D.C. Cir. 1986); *Ryan v. Dep't of Just.*, 617 F.2d 781, 789, 792 (D.C. Cir. 1980)).  But this rule is not absolute, as the D.C. Circuit has recognized exceptions where errors or changes in facts or law would cause the Government to have to release "information compromising national security or sensitive, personal, private information unless the court allows it to make an untimely exemption claim . . . after the original district court proceedings have concluded." *Maydak*, 218 F.3d at 767 (because the Government failed to explain adequately why it could not have pleaded the other exemptions on which it wished to rely in the original district court proceedings, the D.C. Circuit denied the motion for remand).  Even under *Maydak*, courts "emphasize[] the 'discretion' of the court to decide which late assertions to entertain and for what reason." *Shapiro v. Dep't of Just.*, Civ. No. 13-00555 (RDM), 2016 U.S. Dist. Lexis 68476, at *11 (D.D.C. May 25, 2016).  The *Shapiro* court determined, however, that the D.C. Circuit has "emphasize[d] a 'flexible approach to handling belated invocations of FOIA exemptions[.]'" *Farahi v. FBI*, Civ. A. 15-2122 (RBW), 2017 U.S. Dist. Lexis 236496, at *3 (D.D.C. Jan. 23, 2017).  "[T]he government to make some threshold showing of good cause" to avoid a forfeiture finding.  *Id*.

Thus, pursuant to Rule 1 and in the interest of judicial economy, the FBI and EOUSA respectfully request that the Court afford the FBI 28 months and EOUSA 12 months to conduct its Exemption 7(A) review, while preserving its ability to assert other exemptions. *See* Fed. R. Civ. P. 1 (requiring rules to "be construed, administered, and employed by the court and the parties to

secure the just, speedy, and inexpensive determination of every action and proceeding"). Thereafter, the FBI and EOUSA intends to request that the Court enter a briefing schedule to govern the Court's review of the FBI's withholdings under Exemption 7(A).

**ARGUMENT**

I.     <u>**The CIA did not Receive Plaintiff's Request, and It Should be Dismissed**</u>

FOIA provides that "[e]ach agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall – (i) determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of – (I) such determination and the reasons therefore[.]"  5 U.S.C. § 552(a)(6)(i)(I). The Court's jurisdiction under the FOIA extends only to claims arising from the improper withholding of agency records.  5 U.S.C. § 552(a)(4)(B); *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (quoting *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)).  Under FOIA, an agency's obligations to provide information do not begin until the agency receives a valid request; "'failure to file a perfected request therefore constitutes failure to exhaust administrative remedies.'"  *Rodriguez-Cervantes v. Health & Hum. Servs.*, 853 F. Supp. 2d 114, 117 (D.D.C. 2012) (quoting *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002)).

"Federal jurisdiction over a FOIA claim is dependent upon a showing that an agency improperly withheld agency records."  *Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C.2008). "[T]he mailing and receipt of a FOIA request" is "an essential element of a FOIA action," *Schoenman v. FBI*, Civ. A. No. 04-2202, 2006 WL 1126813, at *13 (D.D.C. Mar. 31, 2006), because "[i]t cannot be said that an agency improperly withheld records if the agency did not receive a request for those records."  *Banks*, 539 F. Supp. 2d at 235.  "Without any showing that the agency received the request, the agency has no obligation to respond to it."  *Hutchins v. Dep't of Just.*, Civ. A. No. 00-2349, 2005 WL 1334941, at *2 (D.D.C. June 6, 2005); *see also West v.*

- 8 -

*Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C.2006) (requester did not have "viable FOIA claim" where agency had no record of receiving FOIA request and therefore did not withhold documents in violation of FOIA), *aff'd*, No. 06–5281, 2007 WL 1723362, at *1 (D.C. Cir. Mar. 6, 2007) (per curiam) (noting that plaintiff "has shown no proof of receipt by the [relevant agencies] of that FOIA request").

Here, CIA does not have any record of a FOIA request submitted from the Plaintiff. Williams Decl. ¶ 7.  To confirm, CIA conducted a search of its intake database using a combination of Plaintiff's first and last name on one hand and his last name alone on the other.  *Id* "When the agency offers a declaration stating that a search of its records failed to unearth any evidence of having received a specified FOIA request from the plaintiff, this declaration is entitled to "a presumption of good faith." *Long v. Dep't of Just.*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006).  A FOIA claim fails if the plaintiff never sent a FOIA request to the agency.  This follows from the plain language of the statute. The agency's obligation to produce records arises only "upon a[] request for records."  5 U.S.C. § 552(a)(3)(A), (6)(A).  So, if there has been no request, the agency has not "improperly withheld" any records. *Id*. § 552(a)(4)(B).  Thus, "[i]n the absence of any evidence that plaintiff submitted a proper FOIA request to which [the agency] would have been obligated to respond," the agency "is entitled to judgment as a matter of law." *Thomas v. FCC*, 534 F. Supp. 2d 144, 146 (D.D.C. 2008).

Moreover, an agency's FOIA obligation is not triggered until a request has been received. *See Trupei v. Customs & Border Prot.*, Civ. A. No. 07-0475 (PLF), 2008 U.S. Dist. Lexis 5801, at *3 (D.D.C. Jan. 29, 2008) ("In the absence of any indication in the record of an improper withholding of agency records or of agency bad faith, the Court concludes that it lacks subject matter jurisdiction to entertain this FOIA action."); *see also Reynolds v. Dep't of Just.*, Civ. No.

16-1428 (JEB), 2017 WL 1495932, at *2 (D.D.C. April 26, 2017) ("A federal agency has no obligation to respond to a FOIA request it has not received.").  Where, as here, an agency submits a declaration stating it did not receive the FOIA request, the burden falls on the requester to come forward with proof to create a genuine dispute of fact that he sent the FOIA request to the agency and the agency received it.  *See Pinson v. Dep't of Just.*, 69 F. Supp. 3d 108, 113–14 (D.D.C. 2014); *MacLeod v. Dep't of Homeland Sec.*, Civ. A. No. 15-1792, 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (citing *Dale*, 238 F. Supp. 2d at 103 (when an agency's declaration "demonstrate[s] that the prerequisites for triggering the agency's duties to search and produce responsive records have not been satisfied," and the agency's declaration stands unrebutted by competent evidence, "the agency is entitled to summary judgment.")).  Because Plaintiff failed to submit a perfected FOIA request, or any other kind of request for that matter, to the CIA, it should be dismissed from this action for reasons set forth above.

## II.     The FBI and EOUSA have Demonstrated Good Cause for Bifurcation

There is no controlling precedent governing FBI and EOUSA's motion to preserve their rights to assert underlying FOIA exemptions later if their Exemption 7(A) claims fail in the first instance.  *See Cole v. Olthoff*, Civ. A. No. 19-1070 (DLF), 2021 U.S. Dist. Lexis 115699, at *7 (D.D.C. Jun. 22, 2021) ("[N]either *Maydak* nor any other D.C. Circuit precedent directly governs the late assertion of FOIA exemptions during the pendency of district court proceedings.").  In *Maydak*, the agency relied on Exemption 7(A) to withhold certain records pertaining to then-pending criminal proceedings.  218 F.3d at 762.  After the District Court granted the agency's motion for summary judgment and while the case was on appeal, the criminal proceedings concluded, thereby mooting the applicability of Exemption 7(A).  *Id.* at 764.  The agency sought remand to the District Court to allow it to assert additional FOIA exemptions for the first time, but the D.C. Circuit denied the motion because "there has been no substantial change in the factual or

legal context of this case, and thus that there is no reason for us to deviate from our usual rule of requiring the government to assert all its FOIA exemption claims in the original district court proceedings." *Maydak,* 218 F.3d at 768; *see also August v. FBI*, 328 F.3d 69 (D.C. Cir. 2003) (remanding for consideration of underlying exemptions not asserted during the original district proceeding due to human error).  Notably, both *Maydak* and *August* recognize exemptions to the " general rule, [that the Government] must assert all exemptions at the same time, in the original district court proceedings."  *Maydak*, 218 F.3d at 764-65.

Embedded in *Maydak,* 218 F.3d at 760, was the D.C. Circuit's concerns the Government "ha[d] failed to explain adequately why it could not have pleaded the other exemptions on which it wished to rely in the original district court proceedings,", and "tactical maneuvering at a plaintiff's expense" at the expense of "judicial finality and economy, avoiding delay, and fairness." *Id*. at 769.  *Maydak* is distinguishable from the case at bar for several reasons.  First, neither the FBI nor EOUSA is seeking to deviate from *Maydak's* dictum that all exemptions should be raised in the original district court proceeding.  *See Sciba v. Bd. of Governors of Fed. Reserve Sys.*, Civ. A. No. 04-011 (RBW), 2005 WL 758260, at *1 (D.D.C. Apr. 1, 2005) ("[A] fair reading of [*Maydak*] leads to the conclusion that the exemption only need be raised at a point in the district court proceedings that gives the court an adequate opportunity to consider it.").  Second, as discussed in further detail below, both agencies have proffered an explanation why the Court should permit them to first assert and defend their Exemption 7(A) claim in the nearer terms and then, if and when necessary, assert and defend the more time-consuming underlying exemptions. Third, neither option deprives Plaintiff of an option to challenge the agencies' exemption claims in the original district court proceeding.  Nor is either option at the expense of judicial finality or economy.

Agency affidavits are afforded "a presumption of good faith." *Shapiro v. Dep't of Just.*, 944 F.3d 940, 943 (D.C. Cir. 2019). Here, the agencies' declaration set forth ample explanations for why the Court should exercise its discretion to bifurcate the processing and briefing processes. For both agencies, bifurcation enables them to expedite processing and briefing categorical document-by-document review under Exemption 7(A) versus the more cumbersome page-by-page review that would be necessary if they have to process and brief all the underlying exemption claims. *See* Seidel Decl. at 5-6, ¶ 12; *see also* Moore Decl. at 5-6, ¶ 14. With bifurcation, EOUSA and the FBI can process and brief Exemption 7(A) withholding in twelve months and twenty-eight months, respectively, versus three years to four-and-a-half years, respectively, for the more cumbersome underlying exemptions claims. *Id.*

*Maydak* and *August* "emphasizes the 'discretion' of the court to decide which late assertions to entertain and for what reason." *Shapiro*, Civ. No. 2016 U.S. Dist. Lexis 68476 *11; *see also Cuban v. Sec. Exch. Comm'n*, 795 F. Supp. 2d 43, 61-63 (D.D.C. 2011) (permitting agency to advance a belated Exemption 3 assertion in light of the pending proceedings and "the importance of protecting information in the [SEC's] suspicious activity reports"); *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, Civ. No. 11-00592, 2016 U.S. Dist. Lexis 42576, at *5, n.2 (D.D.C. Mar. 30, 2016) (permitting the FBI to advance a belated Exemption 5 assertion).

The relief the agencies seek here reflect a procedure commonly employed by district courts in this Circuit as a means to promote judicial economy and the speedy and just resolution of FOIA matters. *See, e.g., Pub. Invs. Arbitration Bar Ass'n v. SEC*, Civ. A. No. 11-2285 (BAH) (D.D.C. entered July 16, 2012), Min. Order (granting defendant's request to move for summary judgment on Exemption 8 without waiving any allegation that records are exempt from release under other FOIA exemptions); *Ciralsky v. CIA*, Civ. A. No. 00-1709 (D.D.C. Aug. 8, 2005), Min. Order

(granting defendant's request to move for summary judgment on Exemption 1 without waiving any allegation that records are exempt from release under other FOIA exemptions).  Indeed, the D.C. Circuit authorized a similar procedure in *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 598, 605 (D.C. Cir. 2004), in which the Court remanded a FOIA case to the district court to allow a defendant agency to assert certain exemptions that it had not previously asserted.  The Court concluded that the agency had reserved its right to assert these additional exemptions through its district court filings, in which it stated, "[s]hould the Court determine that the documents in question constitute agency records for purposes of the FOIA . . . the defendant reserves the right, pursuant to the statute, to assert any applicable exemption claim(s), prior to disclosure, and to litigate further any such exemption claims." *Id.*  Here, rather than assuming that additional exemptions would be preserved, as did the agency in *United We Stand*, the agencies seek an order authorizing its planned processing.

Courts may bifurcate actions "[f]or convenience, to avoid prejudice, or to expedite and economize.  *See* Rule 42(b); *see also Webb v. Hyman*, 861 F. Supp. 1094, 1119 (D.D.C. 1994) (Under Fed. R. Civ. P. 42(b), a court may bifurcate claims or issues for separate trial to advance judicial economy, to avoid the possibilities of confusion, to further convenience, to avoid delay and prejudice, and to serve the ends of justice.).  Furthermore, a court has broad discretion to choose whether to bifurcate claims in a case for separate trial, and a court may order a case bifurcated even if only one criterion from Rule 42(b) is satisfied.  While the contexts are slightly different, *i.e.*, trials versus FOIA dispositive briefing, the factors set forth in Rule 42 are instructive.  Here, it would appear that bifurcation to enable the FBI and EOUSA to process, release and brief their Exemption 7(A) claims in the short term and preserving the underlying exemptions for later satisfies one or more of the factors expressly enumerated in Rule 42.  Specifically, in this case,

bifurcation promotes convenience, avoids prejudice, expedites the case, and is judicially economical.  *See McIntosh v. District of Columbia*, Civ. A. No. 96-0200, 1997 U.S. Dist. Lexis 23891, at *9 (D.D.C. Dec. 8, 1997) (allowing bifurcation because "the lawsuit against [a defendant] is ready to proceed to trial, whereas an ongoing discovery dispute continues to bog down the lawsuit against" a second defendant).  Analogously, in this context, bifurcation would allow briefing on Exemption 7(A), which would be ready long before the underlying exemptions, to take place and avoid unduly delaying resolution of this action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the CIA from this FOIA case and bifurcate proceedings for the FBI and EOUSA to process Exemption 7(A) first and preserve the other underlying exemptions for later proceedings.

Dated: November 3, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:          */s/ Kenneth Adebonojo*
      KENNETH ADEBONOJO
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2562
      kenneth.adebonojo@usdoj.gov

*Attorneys for the United States of America*